JUDGE ROBERTSON
delivs'Eed the opintoh of the covet:
This appeal presents for our revision a judgment, by the chancellor of the city of Louisville, on conflicting claims by antagonist members of the Methodist Church on Centre street, in that city, to the exclusive use of the church property. All the members of that church are colored persons, most of whom were, until lately, slaves. A minority of the members adhere to “the Methodist Episcopal Church, South;” but the majority, having recently seceded and joined the Methodist organization North, have evicted them from the possession and use of the church property, for restoration to the exclusive enjoyment of which the ejected party brought this suit in equity, and obtained a decree as sought by their petition.
In the year 1832, when colored Methodists, mostly slaves, were under the charge of the white Methodist Church then on Fourth, now on Fifth street, W. T. Spurrier and his wife conveyed a lot. of ground on Centre •street, thirty-five feet front and sixty feet bade, to Coleman Daniel and others, and to their successors, as trustees of said church, to hold forever in trust, to build, or cause to be built, a house of worship, for the use of the Methodist Episcopal Church of the United States; to permit such preachers to preach therein as should be appointed for that purpose by the general or authorized Annual Con *230 ference of said church, and to keep up the succession of trustees by successive appointments by the board itself, in a prescribed mode.
In the year 1845, the same vendors sold and conveyed an additional and adjoining lot of twenty-seven feet front and sixty feet back, to Hasbrook and others, white “trustees of the Methodist Episcopal Church, South, for the use and benefit of the African members of said church,” to hold forever in trust “ for the use of the African members of the Fourth Street former charge, and a part of the mission of colored people worshiping on Centre, now under the direction of the Methodist Episcopal Church, South, and .in further trust and confidence that they shall, at all times, permit -such ministers and preachers belonging to said church as shall, from time to time, be duly authorized by the General Conference of the ministers and preachers of said Methodist Episcopal Church, South, or by the Annual Conferences authorized by said General Conference, to preach and expound God’s holy word therein;” and in further trust and confidence that the succession in said board of trustees shall be continued in a prescribed mode by the board itself, always to consist of white members.
About the year 1854, Mary H. McGinnis, for the consideration of one thousand dollars, sold and covenanted to convey to the same uses an additional and adjoining lot of eighteen feet front by sixty feet back; and in 1865 she conveyed the legal title to appellant, Peter Lewis, and others, colored persons of the seceding party claiming to be “trustees of the Centre Street Methodist Episcopal Church;” and a part of the church building is on the grounds thus conveyed.
It thus sufficiently appears that the first conveyance was constructively made for the prospective use of the colored members of the Fourth Street Methodist Church, *231 and was so dedicated and used; that the second conveyance, shortly after the separate organization of “ the Methodist Episcopal Church, South,” was expressly made for the benefit of the same colored members who, by the compact of separation and their own acquiescence, became an integral element of that Southern Church, and subject to its ecclesiastical curation and jurisdiction, and that the last purchase was intended for the same use; and, consequently, the trusts declared in the deed of 1845 apply equally to all the ground bought for that use.
As adjudged by this court in the case of Gibson vs. Armstrong (7 B. Mon.), the conventional division of the Methodist Episcopal Church of the United States into two sections, North and South, and the independent organization of “ The Methodist Episcopal Church, South,” were constitutional and effectual, and passed the Fourth Street Methodist Church and its dependent African Church, with all their church property, under the exclusive jurisdiction of the southern organization; and, therefore, as also adjudged in the same case, the members of those subordinate and affiliated churches held a beneficial interest in the church property so long, and only so long, as they continued members also of the Methodist Episcopal Church, South. Consequently, by seceding from that sectional church, the appellants, claiming as a majority, dominion over the property dedicated to the African Church on Centre, as an appendage of the Methodist Episcopal Church, South, forfeited their right to that property, and, by wrongfully assuming control over it, intruded on the exclusive rights of the only rightful beneficiaries who remain members of the great Southern Church.
While this has not been gravely controverted, the distinguished counsel of the appellants insist on a reversal *232 of the chancellólas judgment, because, as ingeniously argued, ihe petition fails to allege all the facts necessary to entitle them to the relief granted; but the facts, as alleged and admitted, sustain the chancellor’s decree requiring a surrender of the church property to the trustees of the Fourth Street Church, to be held for the sole use of colored members of the Centre branch of the Methodist Episcopal Church, South. Those facts and admissions, consistently interpreted, show that the appellees, when evicted, were members of the Centre African Church, then attached to the southern organization ;.that none but white members could be lawful trustees; and that the litigant successors of the trustees to whom the legal title was conveyed by the deeds of 1832 and 1845, are white members of the Methodist Episcopal Church, South, and the only rightful trustees of the Centre Street station of the colored members of the same church. But, even if this had not been alleged, the chancellor, having authority to appoint proper trustees to hold the title, virtually appointed, by effectual recognition at least, those to whom he decreed the restitution of possession for the exclusive use of the only beneficiaries equitably entitled thereto.
Yet, still the counsel of appellants argue that the allegation that, for some time, no preacher had been appointed by the conference for the Centre Church, and that, consequenlly, the ruling majority of its actual members had chosen their pastor, shows that the Methodist Episcopal Church, South, had renounced all connection with the Centre station, or that the latter had assumed independence, and is no longer subject to the jurisdiction of the conference ; and that, therefore, the majority had a right to join the northern section as they did, or to maintain an isolated position and exercise uncontrolled dominion *233 over the property dedicated to the use of members of the Methodist Episcopal Church, South.
But this is an indefensible assumption, unsustained by either facts or law. The trust, as to this matter, only makes it the duty of the Centre Street Church to “permit” the conference to select its pastors, and to accept such as it may recommend, which obviously implies the inherent right in the majority of that society to choose its own preachers, subject only to the paramount choice of the conference, whenever it may see fit to choose. If the conference forbear to exercise its discretionary and somelimes, perhaps, unwelcome power, and prudently defer to the mofe satisfactory choice of the local church itself, such abstinence cannot imply renunciation of constitutional union and dependence; and if any such baseless implication could be indulged, a conclusive refutation is furnished by the organic law of the Southern Church, which will not allow any such dissolution of the fundamental union of all its constituent parts and co-operating connections. >
Besides, if there had been a valid dissolution, it would be unavailing to the appellants so far as the church property is concerned; for if all the members of the Centre Street Church had repudiated its constitutional dependence and connections and gone north, they could not have taken the property'with them, but would have left it as dedicated, to the use and control of the Methodist Episcopal Church, South. And just so the seceding appellants left it to the exclusive use of the adhering appellees as abiding members of the Southern Church.
The chancellor’s decree seems, therefore, right; and as it sufficiently secures the use to the rightful parties, without any necessity for a reconveyance of the legal tille to tbe ground illegally and ineffectually conveyed by Mrs. *234 McGinnis to black persons not members of the Southern Church, we will not, on the cross-errors, reverse merely because such formal and unnecessary reconveyance was not expressly required.
Wherefore, the entire judgment is approved and affirmed.